# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD R. REILLY, as Administrator** | : | |
| **of the Estate of VERONIQUE A. HENRY,** | : | |
| **deceased,** | : | |
| **Plaintiff** | : | **No. 1:18-cv-01803** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **YORK COUNTY, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Before the Court are: Defendants PrimeCare Medical, Inc., Amanda Spahr, and Sonya Frey's (collectively, the "PrimeCare Defendants") motion to dismiss, or in the alternative, for summary judgment, as to Counts I and II of Plaintiff Richard Reilly ("Plaintiff")'s complaint (Doc. No. 16); Defendants York County, Warden Mary Sabol, Lynette Moore, and Maria Stremmel's (collectively, the "York County Defendants") motion for summary judgment (Doc. No. 22); and Plaintiff's motion for leave to file an amended complaint (Doc. No. 32). For the reasons provided herein, the Court will deny the PrimeCare Defendants' motion (Doc. No. 16), deny the York County Defendants' motion (Doc. No. 22), and grant Plaintiff's motion (Doc. No. 32).

## I.    BACKGROUND[1]

Plaintiff is the administrator of the estate of Veronique A. Henry ("Ms. Henry"). (Doc. No. 1 ¶ 1.) Defendant York County is a municipality of the Commonwealth of Pennsylvania, the owner and operator of the York County Prison ("YCP"), and the employer of Defendant Mary

---

[1] The following background information is taken from Plaintiff's complaint. (Doc. No. 1.) The allegations set forth in the complaint are accepted as true for the purpose of a motion to dismiss. <u>See</u> <u>Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.</u>, 113 F.3d 405, 417 (3d Cir. 1997) (explaining that "[w]hen reviewing a 12(b)(6) dismissal, [the Court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them").

Sabol, the Warden of YCP ("Defendant Sabol"), Defendant Lynette Moore, a correctional officer at YCP ("Defendant Moore"), and Defendant Maria Stremmel, a correctional officer at YCP ("Defendant Stremmel").  (Id. ¶¶ 2-6.)  Defendant PrimeCare Medical, Inc. ("Defendant PrimeCare"), a Pennsylvania corporation with a principal place of business of 3940 Locust Lane, Harrisburg, Pennsylvania, was responsible for providing staff and overseeing medical treatment of inmates at YCP, and is the employer of Defendant Sonya Frey, a nurse at YCP ("Defendant Frey"), and Defendant Amanda Spahr, a medical assistant at YCP ("Defendant Spahr").  (Id. ¶¶ 7-8.)  Defendants John Does I-V are medical providers practicing at YCP or correctional officers or other prison personnel at YCP (the "John Doe Defendants").  (Id. ¶ 12.)

On September 14, 2016, at approximately 10:30 P.M., Ms. Henry was admitted to YCP. (Id. ¶ 15.)  Upon admission, Defendant Moore and Defendant Stremmel moved Ms. Henry to the "medical holding tank" because they were concerned that she might commit suicide.  (Id. ¶ 16.) Defendant Moore knew Ms. Henry from previous instances where she was incarcerated and "specifically noted that on this occasion Ms. Henry appeared to be acting very solemn[ly] and differently, in a manner that made [D]efendant Moore concerned Ms. Henry might hurt herself." (Id. ¶ 17.)  According to Plaintiff, because Ms. Henry had previously been incarcerated at YCP, all Defendants knew that Ms. Henry had an existing mental health condition and that she had been on medication to treat her mental health conditions, which included depression.  (Id. ¶ 18.) Plaintiff avers that during Ms. Henry's previous incarcerations, she asked to speak with a psychiatrist or other mental health provider and that she had contemplated suicide.  (Id. ¶ 19.)

Plaintiff alleges that upon Ms. Henry's admission to YCP, concern about Ms. Henry's suicide risk was so great that Defendant Moore, in consultation with Defendant Stremmel and/or other John Doe correctional officers, called the YCP medical staff and requested that a nurse

speak with Ms. Henry to evaluate her for "suicide precautions." (Id. ¶ 20.) According to

Plaintiff, Defendant Frey conducted that evaluation at approximately 11:15 P.M. on September

14, 2016, and questioned Ms. Henry in the medical holding tank in the presence of Defendant

Moore and Defendant Stremmel. (Id. ¶ 21.) Plaintiff alleges that during that evaluation, Ms.

Henry conveyed that she took Paxil for anxiety, and that she had a husband and two children and

that her husband was physically and mentally abusive toward her. (Id. ¶¶ 23-24.) Plaintiff

further alleges that Defendant Moore and Defendant Stremmel told Defendant Frey that, based

on their knowledge of Ms. Henry, they believed that she should be placed on suicide watch

because they were concerned that she would attempt to commit suicide. (Id. ¶¶ 25-26.) Plaintiff

states that, despite this fact, Ms. Henry was neither placed on suicide watch nor seen by a

psychiatric specialist or other medical health provider. (Id. ¶ 28.) Plaintiff further alleges that

Defendant Frey was not qualified to perform a mental health assessment, and that Defendant

PrimeCare knew that Defendant Frey was not qualified to perform a mental health assessment.

(Id. ¶¶ 27, 29.)

Plaintiff avers that less than an hour later, at approximately 11:50 P.M., Ms. Henry

underwent "the standard intake medical screen" performed by Defendant Spahr. (Id. ¶ 30.)

According to Plaintiff, Defendant Spahr noted that Ms. Henry's prior incarcerations included

problems related to "psychological/mental health segregation" and "psychological/medication-

assessment substance abuse." (Id. ¶ 33.) Plaintiff alleges that during the screen, Ms. Henry told

Defendant Spahr: (1) that she had experienced a significant loss within the last six months; (2)

that she was very worried about major problems other than her legal situation; (3) that she had a

mental health treatment history as well as a history of drug or alcohol abuse; (4) that she was

addicted to several medications including Xanax and Percocet; (5) that she felt she needed to see

a mental health provider; and (6) that she had suffered a head injury that day resulting from a motor vehicle collision. (Id. ¶¶ 33-39.) Plaintiff further alleges that, despite these warning signs, Ms. Henry was not placed on suicide watch or seen by a mental health professional, and that no limitations or restrictions were placed on her. (Id. ¶ 41.) Plaintiff alleges that Defendant Spahr was not qualified to perform a mental health assessment, and that Defendant PrimeCare knew that Defendant Spahr was not qualified to perform a mental health assessment. (Id. ¶¶ 31-32.)

Plaintiff states that Ms. Henry was then transferred to cell #4B on September 15, 2016 at approximately 12:14 A.M. Plaintiff further states that the next morning, at approximately 10:11 A.M. on September 15, 2016, Ms. Henry was found hanging from a white bed sheet in her cell and pronounced dead on the same date. (Id. ¶ 43.) Plaintiff's complaint alleges that additional inmates from YCP have recently committed suicide. (Id. ¶ 45.)

On September 13, 2018, Plaintiff filed the instant complaint asserting the following five counts: violations of Ms. Henry's "right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Ms. Henry's right to due process of law under the Fourteenth Amendment to the United States Constitution" against Defendants Moore, Stremmel, Frey and Spahr (Count I); violations of Ms. Henry's "right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Ms. Henry's right to due process of law under the Fourteenth Amendment to the United States Constitution" against Defendants York County, PrimeCare, Sabol, and the John Doe Defendants (Count II); state law negligence claims against Defendants Frey, Spahr, PrimeCare, and York County (Count III); a wrongful death claim against all Defendants (Count IV); and a survival claim against all Defendants (Count V). (Id. at 11-17.)

On November 16, 2018, the PrimeCare Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 16), and a brief in support thereof (Doc. No. 17), as well as a Statement of Facts (Doc. No. 18), addressing Counts I and II of Plaintiff's complaint. The York County Defendants filed a motion for summary judgment (Doc. No. 22), and a brief in support thereof (Doc. No. 23), as well as a Statement of Facts (Doc. No. 19), on the same date. On January 24, 2019, Plaintiff filed a brief in opposition to PrimeCare Defendants' motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 24), with an Answer to Statement of Facts (Doc. No. 25), and a brief in opposition to York County Defendants' motion for summary judgment (Doc. No. 26). The York County Defendants and the PrimeCare Defendants both filed briefs in reply. (Doc. Nos. 28, 31.) On February 15, 2019, Plaintiff filed a motion for leave to file an amended complaint (Doc. No. 32), and a brief in support thereof (Doc. No. 35). The York County Defendants and the PrimeCare Defendants both filed briefs in opposition to Plaintiff's motion. (Doc. Nos. 33, 37.) Plaintiff has not replied and the time in which to do so has elapsed. Accordingly, the motions are ripe for disposition.

## II.     LEGAL STANDARDS

### A.     PrimeCare Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), or in the Alternative, Motion for Summary Judgment and York County Defendants' Motion for Summary Judgment

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d. Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  See id.  The plausibility standard requires more than a mere possibility that

the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the

United States Court of Appeals for the Third Circuit has identified the following steps a district

court must take when determining the sufficiency of a complaint under Rule 12(b)(6):  (1)

identify the elements a plaintiff must plead to state a claim;  (2) identify any conclusory

allegations contained in the complaint "not entitled" to the assumption of truth;  and (3)

determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly

give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d

Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference of integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Parties may move for summary judgment on particular claims or defenses, or on a part of each claim or defense. See Fed. R. Civ. P. 56(a). Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See id. A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis for allowing a reasonable factfinder to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. See id. at 251-52. In making this determination, a court must "consider all evidence in the light most favorable to the party opposing the motion." See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. See <u>Conoshenti v. Pub. Serv. Elec. & Gas. Co.</u>, 364 F.3d 135, 145-46 (3d Cir. 2007). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." <u>See</u> <u>Berckeley Inv. Grp. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. <u>See</u> <u>Celotex</u>, 477 US. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. <u>See</u> <u>Anderson</u>, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. <u>See</u> <u>id.</u> at 252; <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Mem'l Hosp.</u>, 192 F.3d 378, 387 (3d Cir. 1999).

### B. Plaintiff's Motion for Leave to File an Amended Complaint

Federal Rule of Civil Procedure 15(a) governs Plaintiff's request for amendment and provides, in pertinent part, that after amending a complaint once as a matter of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." <u>See</u> Fed. R. Civ. P. 15(a)(2). As the Supreme Court has stated, "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion, it is merely an abuse of discretion

and inconsistent with the spirit of the Federal Rules."  See Foman v. Davis, 371 U.S. 178, 182 (1962).

Grounds potentially justifying denial of leave to amend are "undue delay, bad faith, dilatory motive, prejudice, and futility."  See id.;  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief can be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002);  In re Burlington, 114 F.3d at 1434.  In assessing "futility," a district court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6).  See In re Burlington, 114 F.3d at 1434;  3 Moore's Federal Practice, § 15.15[3] at 15-55 to 15-61 (3d ed. 2013).  Accordingly, in assessing the potential futility of a proposed amended complaint, the Court must accept as true the allegations in the proposed amended complaint and construe those allegations in the light most favorable to the party seeking leave to amend.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).

The issue of "prejudice" focuses on hardship to the defendant if the amendment were permitted, specifically, whether amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories."  See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  With regard to "undue delay," the Third Circuit has held that the mere passage of time does not require that a motion to amend a pleading be denied;  "however, at some point, the [movant's] delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."  See Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).  In assessing the issue of "undue" delay, the Court's focus is on the movant's motives for not amending sooner. See id.

## III.  DISCUSSION

### A.  PrimeCare Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment

#### i.  Arguments of the Parties

The PrimeCare Defendants argue that dismissal of Counts I and II of Plaintiff's complaint is appropriate because Plaintiff fails to allege facts supporting a plausible inference that Ms. Henry had a particular vulnerability to suicide or that, if she did, that the individual medical caregivers were deliberately indifferent to her serious medical need.  (Doc. No. 23 at 10.)  The PrimeCare Defendants further argue that because Plaintiff cannot establish any constitutional violation, Plaintiff's <u>Monell</u> claim against Defendant PrimeCare must also be dismissed.  (<u>Id.</u> at 11.)  The PrimeCare Defendants also maintain that the remaining claims – state law claims for negligence, wrongful death, and survival (Counts III, IV, and V) – should be dismissed without prejudice to Plaintiff's right to refile those claims in state court, arguing that if Counts I and II are dismissed, the Court will lack subject-matter jurisdiction over the remaining state law claims.  (<u>Id.</u> at 12.)

In response, Plaintiff argues that he has alleged sufficient facts in his complaint to survive Defendants' motion to dismiss pursuant to Rule 12(b)(6) and that the Court should permit the parties to conduct discovery before disposing of the PrimeCare Defendants' motion for summary judgment.  (Doc. No. 24 at 5-10.)  In an affidavit, Plaintiff avers that the parties have not yet engaged in discovery beyond initial disclosures and that, as a result, he has not had the opportunity to request production of documents or answers to interrogatories, or to conduct depositions of witnesses and Defendants.  (Doc. No. 25-2 at 1-2.)  In his brief, Plaintiff argues that he has not yet had the opportunity to review Defendant PrimeCare's policies and procedures, or to depose witnesses who might offer information regarding Defendant PrimeCare's unwritten

practices and norms. (Doc. No. 24 at 10.)  Accordingly, he maintains that Defendant

PrimeCare's alternative motion for summary judgment is premature.

### ii. Whether the PrimeCare Defendants are Entitled to Dismissal of Counts I and II Pursuant to Rule 12(b)(6)

The Eighth Amendment "prohibits prison officials from being deliberately indifferent to

an inmate's serious medical needs."  See Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017)

(citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The Third Circuit recently summarized the

standard applicable to deliberate indifference claims against prison officials relating to failure to

prevent suicide as follows:

> when a plaintiff seeks to hold a prison official liable for failing to prevent a
> detainee's suicide . . . a plaintiff must show: (1) that the individual had a particular
> vulnerability to suicide, meaning that there was a "strong likelihood, rather than a
> mere possibility," that a suicide would be attempted; (2) that the prison official
> knew or should have known of the individual's particular vulnerability; and (3) that
> the official acted with reckless or deliberate indifference, meaning something
> beyond mere negligence, to the individual's particular vulnerability.

Id. at 223-24 (citation omitted).[2]  A "strong likelihood" of suicide "must be 'so obvious that a lay

person would easily recognize the necessity for' preventative action."  See id. at 222 (quoting

Colburn v. Upper Darby Twp., 946 F.2d 1017, 1025 (3d Cir. 1991) (citation omitted)).  With

regard to Plaintiff's claims against Defendant PrimeCare, "[t]o state a claim against a private

corporation providing medical services under contract with a state prison system, a plaintiff must

allege a policy or custom that resulted in the alleged constitutional violations."  See id. at 232

(citing Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003)).

---

[2] The Third Circuit has stated that a pretrial detainee may bring a claim pursuant to the Due
Process clause of the Fourteenth Amendment "that is essentially equivalent to the claim that a
prisoner may bring under the Eighth Amendment," and, therefore, the showing necessary for
such claims is the same regardless of whether the claimant is a pretrial detainee or a convicted
prisoner.  See id. at 223.

As to Plaintiff's constitutional claims against Defendant Frey and Defendant Spahr, Plaintiff alleges that, because of Ms. Henry's prior incarcerations, the York County Defendants knew that: (1) she had an existing mental health condition; (2) she had been on medication for various mental health issues, including depression; (3) she had previously asked to speak with a psychiatrist or other mental health professional; and (4) that she had contemplated suicide. (Doc. No. 1 ¶¶ 18-19.) Plaintiff also alleges that Defendant Moore, in consultation with Defendant Stremmel and/or other John Doe correctional officers, requested that a nurse speak with Ms. Henry to evaluate her for "suicide precautions" because the "known concern that Ms. Henry would commit suicide was so great." (Id. ¶ 20.) Plaintiff alleges that, in response to this request, despite not being qualified to perform a mental health assessment or a suicide assessment, Defendant Frey performed such an assessment on Ms. Henry, and that during this assessment, Ms. Henry indicated to Defendant Frey that her husband was physically and mentally abusive and that she took Paxil for anxiety. (Id. ¶¶ 23, 24, 27.) According to Plaintiff, Defendant PrimeCare knew that Defendant Frey was not qualified to perform this mental health assessment. (Id. ¶ 29.) Plaintiff further avers that Defendant Moore and Defendant Stremmel told Defendant Frey that they believed Ms. Henry should be on suicide watch because "they were concerned she was going to commit suicide." (Id. ¶ 26.) Plaintiff alleges, however, that Ms. Henry was neither placed on suicide watch nor evaluated by a mental health provider. (Id. ¶ 28.)

With regard to his claims against Defendant Spahr, Plaintiff alleges that at 11:50 P.M. on September 14, 2015, Defendant Spahr administered the standard medical intake screen. (Id. ¶ 30.) According to Plaintiff, both Defendant Spahr and Defendant PrimeCare knew Defendant Spahr was not qualified to perform a mental health assessment or suicide assessment, but that, nonetheless, Defendant Spahr performed one on Ms. Henry. (Id. ¶¶ 31-32.) Plaintiff alleges that

during the screening, Ms. Henry told Defendant Spahr: (1) that she had experienced a significant loss within the last six months; (2) that she was very worried about major problems other than her legal situation; (3) that she had a mental health treatment history as well as a history of drug or alcohol abuse; (4) that she was addicted to several medications including Xanax and Percocet; (5) that she felt she needed to see a mental health provider; and (6) that she had suffered a head injury that day resulting from a motor vehicle collision.  (Id. ¶¶ 33-39.)  Plaintiff alleges that despite these warning signs of a "particular vulnerability to suicide," Ms. Henry was not placed on suicide watch or seen by a mental health professional.  (Id. ¶ 41.)

Upon careful consideration of the allegations of Plaintiff's complaint, the briefs of the parties, and the relevant authorities, and accepting as true all factual allegations in Plaintiff's complaint and construing all reasonable inferences to be drawn therefrom in a light most favorable to Plaintiff, and while recognizing the "high bar" that Plaintiff ultimately must meet in order to prevail on his deliberate indifference claim,[3] the Court finds that Plaintiff has sufficiently pled facts giving rise to a plausible inference that Ms. Henry had a particular vulnerability to suicide, that Defendant Frey and Defendant Spahr knew of or should have known of that vulnerability, and that Defendant Frey and Defendant Spahr acted with reckless indifference to Ms. Henry's particular vulnerability.  The complaint alleges that the York County Defendants' knowledge of Ms. Henry's existing mental health condition, including her use of medication for mental health issues, including depression, previous requests to speak with mental health professionals, and previous contemplation of suicide, were communicated to Defendant Frey, as well as Defendant Moore and Defendant Stremmel's concern that Ms. Henry was suicidal.  Further, Ms. Henry communicated to Defendants Frey and/or Spahr that:  (1) her

---

[3] See Palakovic, 854 F.3d at 229.

husband was physically and mentally abusive;  (2) she had experienced a recent significant loss;  (3) she was worried about many problems;  (4) she had a mental health history as well as a history of drug and alcohol abuse;  (5) she felt the need to see a mental health provider;  and (6) she had suffered a head injury that day.  The Court concludes that the above allegations are sufficient to support a plausible inference that Defendants Frey and Spahr were recklessly or deliberately indifferent to Ms. Henry's particular vulnerability to suicide.  See Palakovic, 854 F.3d at 230 (stating that Third Circuit precedent "requiring a plaintiff to demonstrate a 'strong likelihood' of self-harm [was] never intended to demand a heightened showing at the pleading stage by demonstrating . . . that the plaintiff's suicide was temporally imminent or somehow clinically inevitable" and that "a particular individual's vulnerability to suicide must be assessed based on the totality of facts presented").

In light of this conclusion, the Court further finds that the allegations of Plaintiff's complaint, accepted as true, are sufficient to support a plausible inference that Defendant PrimeCare had a policy or custom that resulted in this alleged constitutional violation.  Again, while recognizing the "high bar" necessary to prevail on such a claim,[4] the Court makes this finding based on Plaintiff's allegations that:  (1) Defendant PrimeCare knew that neither Defendant Frey nor Defendant Spahr were qualified to perform mental health or suicide assessments, yet permitted them to perform such assessments; (2) Defendant PrimeCare was aware that four other YCP inmates committed suicide at YCP prior to the date of Ms. Henry's death; (3) Defendant PrimeCare is responsible to oversee medical treatment for inmates at YCP; (4) Defendant PrimeCare failed to develop adequate suicide precautions and training;  and (5) Defendant PrimeCare failed to develop adequate policies and practices to protect likely suicide

---

[4] See id. at 229.

14

victims.  (Doc. No. 1 ¶¶ 29, 32, 45-46, 55);  Palakovic, 854 F.3d at 232 (holding that, at the motion to dismiss stage, plaintiffs avoided dismissal of their Monell claim against a private corporation where they alleged that the private corporation consistently failed to provide adequate mental health treatment by virtue of insufficient staffing and poor screening and diagnostic procedures, and that these failures resulted in the suicide of their son).

Accordingly, for the foregoing reasons, the Court will deny the PrimeCare Defendants motion to dismiss Counts I and II of Plaintiff's complaint.  The Court turns to the PrimeCare Defendants' alternative motion for summary judgment on Counts I and II.

### iii.    Whether the PrimeCare Defendants are Entitled to Summary Judgment on Counts I and II Pursuant to Rule 56

The Court concludes that the PrimeCare Defendants' alternative motion for summary judgment as to Counts I and II of Plaintiff's complaint is premature at this stage of the proceedings.[5]  Federal Rule of Civil Procedure 56 allows parties to file motions for summary judgment before the conclusion of discovery.  See Fed. R. Civ. P. 56(b).  However, the Third Circuit has held that in general, a court should not grant summary judgment until the party opposing the motion has had an adequate opportunity to conduct discovery.  See Radich v. Goode, 886 F.2d 1391, 1393 (3d Cir. 1989) (citation omitted) (stating that Federal Rule of Civil Procedure 56(f) provides the district court with discretion to defer ruling on a motion for summary judgment when the party opposing the motion submits an affidavit stating that it requires additional discovery).

---

[5] The Court notes that the PrimeCare Defendants have filed a Statement of Facts and numerous exhibits (Doc. No. 18) in support of their position that they exercised reasonable medical judgment in their care of Ms. Henry, and that, therefore, Plaintiff cannot establish a deliberate indifference claim.

On January 24, 2019, Plaintiff filed a Rule 56(f) affidavit averring that, aside from exchanging initial disclosures, the parties have not engaged in meaningful discovery, and that, as a result, Plaintiff had not had the opportunity to request production of documents and answers to interrogatories, or to conduct depositions of witnesses and Defendants.  (Doc. No. 26-2 at 1-2.) Plaintiff argues that he has not yet had the opportunity to review Defendant PrimeCare's policies and procedures, or to depose witnesses who could offer information as to Defendant PrimeCare's unwritten practices and norms.  (Doc. No. 24 at 10.)

Given that the parties have not had the opportunity to conduct meaningful discovery, the Court concludes that the PrimeCare Defendants' motion for summary judgment is premature. See e.g., Doe v. Mercy Health Corp. of Se. Pa., 150 F.R.D. 83, 85 (E.D. Pa. May 25, 1993) (holding that, where the defendant submitted motion for summary judgment in early stages of discovery, and the court concluded that there was a reasonable possibility that plaintiff would be able to "adduce pertinent evidence through further discovery," the defendant's motion for summary judgment was premature).   Accordingly, the Court will exercise its discretion and deny the PrimeCare Defendants' alternative motion for summary judgment without prejudice to their ability to renew the motion after the close of discovery.

**B.      York County Defendants' Motion for Summary Judgment**

**i.      Arguments of the Parties**

The York County Defendants argue that the Court should grant summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that individual Defendants Sabol, Moore, and Stremmel are qualifiedly immune from liability.  (Doc. No. 23 at 12.)  The York County Defendants argue that there are no genuine issues of material fact as to these individual defendants' entitlement to qualified immunity and, therefore, they are

entitled to summary judgment as to the counts asserted against them.[6]  (Id.)  The York County Defendants also argue that the County of York does not oversee or have any responsibility for the management or operation of YCP, and the responsibility of operating YCP has been delegated to the Board of Inspectors of the York County Prison, also known as the York County Prison Board ("YCPB").  (Id.)  The York County Defendants further contend that Plaintiff's complaint contains no factual allegations related to Defendant Sabol's involvement.  (Id. at 22-23.)[7]

In response, Plaintiff argues that Defendants Sabol, Moore, and Stremmel are not entitled to qualified immunity as to Plaintiff's constitutional claims.  (Doc. No. 26 at 4.)  More generally, however, Plaintiff argues that the York County Defendants' motion for summary judgment is premature at this time because Plaintiff has been unable to obtain discovery from York County Defendants beyond initial disclosures.  (Id. at 7-8.)

### ii. Whether the York County Defendants are Entitled to Summary Judgment Pursuant to Rule 56

---

[6] While the York County Defendants' motion is not entirely clear on this point, it appears that they seek the entry of summary judgment as to Plaintiff's constitutional claims against them (Counts I and II), as well as his state law claims against them (Counts III, IV, and V).  (Doc. No. 22 at 2) ("It is contended that as to the claims alleged there is no genuine issue of a material fact to be tried because the Defendants are entitled to judgment as a matter of law.")  However, the York County Defendants' brief in support of their motion addresses only the constitutional claims asserted against the individual York County Defendants, and does not address the state law claims asserted in Counts III through V.

[7] While the York County Defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 with a supporting Statement of Facts and exhibits (Doc. No. 19), at various times in their briefing on the motion they make arguments regarding whether Plaintiff's complaint contains factual allegations sufficient to state a claim, which is an argument typically addressed by way of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court notes, however, that the York County Defendants have not chosen to file a motion to dismiss, or in the alternative, motion for summary judgment, as the PrimeCare Defendants have done, but, instead, have chosen to frame their motion solely as a motion for summary judgment based on a factual record.  Accordingly, the Court has addressed the York County Defendants' motion as such.

For the same reasons articulated above with regard to the PrimeCare Defendants'
alternative motion for summary judgment, the Court concludes that the York County
Defendants' motion for summary judgment is premature.  According to an affidavit filed by
Plaintiff with the Court, the parties have yet to engage in meaningful discovery, including the
opportunity to request the production of documents or answers to interrogatories or to conduct
depositions of witnesses.  (Doc. No. 26-2 at 1-2.)  As noted above, the Third Circuit has held that
in general, a court should not grant summary judgment until the party opposing the motion has
had an adequate opportunity to conduct discovery.  See Radich, 886 F.2d at 1393; Doe, 150
F.R.D. at 85 (holding that, where defendant submitted motion for summary judgment in early
stages of discovery, and court concluded there was a reasonable possibility that plaintiff would
be able to "adduce pertinent evidence through further discovery," motion for summary judgment
was premature).  Accordingly, the Court will exercise its discretion to deny the York County
Defendants' motion for summary judgment without prejudice to their right to renew the motion
after the close of discovery.

### C.      Plaintiff's Motion for Leave to File an Amended Complaint

#### i.      Arguments of the Parties

Plaintiff seeks to amend his complaint to identify correctly the party responsible for
overseeing and managing YCP as the YCPB, and to add YCPB as a defendant in this matter.
(Doc. No. 35 at 2.)  Specifically, in his proposed First Amended Complaint, Plaintiff revises his
allegations against York County to allege that Defendant York County has "direct oversight
responsibility for York County Prison pursuant to the organizational chart of York County
promulgated in Chapter 73 of the York County Ordinances" and attached as Exhibit B.  (Doc.
No. 32-6 ¶ 2.)  The proposed First Amended Complaint adds a paragraph identifying the YCPB

as fulfilling a statutory purpose to "provide for the safekeeping, discipline, and employment of inmates and the government and management of the correctional institution." (Id. ¶ 3.) Plaintiff submitted with his motion a declaration by his counsel that he was unaware of the involvement of the YCPB as it relates to this matter until the filing and briefing of Defendants' pending motions. (Doc. No. 32-2 ¶ 2.) In his brief in support of his motion, Plaintiff argues that there are no factors weighing against granting his request to file an amended complaint. (Doc. No. 35 at 2.)

The PrimeCare Defendants and the York County Defendants oppose Plaintiff's motion for leave to amend. The PrimeCare Defendants argue that Plaintiff's motion should be denied for two reasons: (1) granting the motion would be futile because the proposed First Amended Complaint fails to state a claim upon which relief may be granted for the same reasons articulated in their pending motion to dismiss, and (2) Plaintiff has unduly delayed his request for leave to file a First Amended Complaint until after the filing of dispositive motions in this matter, resulting in "immense prejudice as the significant time and cost they have already expended will be for nothing" because they will be required to file renewed dispositive motions at another stage in this case. (Doc. No. 37 at 4.) The York County Defendants argue that Plaintiff's lack of awareness that YCPB, not York County, operates YCP is not a valid reason for permitting amendment of his complaint. (Doc. No. 33 at 8.) The York County Defendants also argue that any claim against the YCPB, asserted now, would be barred by the applicable statute of limitations, and, therefore, Plaintiff's amendment would be futile. (Id. at 8-9.)

### ii. Whether Plaintiff Should Be Given Leave to Amend His Complaint

The Court will grant Plaintiff's motion for leave to file an amended complaint. There is a general presumption in favor of granting a party leave to amend its pleadings under Rule

15(a)(2).  See Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984) (recognizing

the general presumption in favor of permitting a party to amend its pleading).  The liberal

approach embodied by this presumption helps to ensure "that a particular claim will be decided

on the merits rather than on technicalities."  See Dole v. Arco Chem. Co., 921F.2d 484, 486-87

(3d Cir. 1990).  Upon review of the record and applicable law, the Court finds that none of the

factors necessary to overcome this presumption is present in the instant case.

 The Court finds the PrimeCare Defendants' futility argument to be unavailing, having

previously found that Plaintiff's complaint states plausible constitutional claims upon which

relief may be granted, and having observed that the only material change to the complaint made

in the First Amended Complaint is the addition of YCPB as a defendant.  Further, the Court is

unpersuaded that Defendant PrimeCare will be prejudiced if the Court grants Plaintiff leave to

amend. While the PrimeCare Defendants argue that Plaintiff has unduly delayed his request for

leave to amend until after the filing of a dispositive summary judgment motion, resulting in

significant prejudice to them, the PrimeCare Defendants neglect to mention that they filed said

dispositive motion prior to the completion of any meaningful discovery in this matter.

 Further, the York County Defendants' argument that Plaintiff's motion for leave to

amend should be denied on the grounds that Plaintiff's claim against YCPB is barred by the

statute of limitations is unavailing.  Pursuant to Federal Rule of Civil Procedure 15(c), a

proposed amendment "relates back" to the date of the original complaint when certain conditions

are met.  Specifically, Federal Rule of Civil Procedure 15(c)(1) provides that an amendment to a

pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation
> back;

<blockquote>
(B)     the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

(C)     the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

     (i)     received such notice of the action that it will not be prejudiced in defending on the merits; and

     (ii)     knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
</blockquote>

See Fed. R. Civ. P. 15(c)(1).

Given that Plaintiff's proposed First Amended Complaint adds YCPB as a defendant, the Court's analysis proceeds under paragraph (C) of Federal Rule of Civil Procedure 15(c)(1).[8] First, the Court observes that Rule 15(c)(1)(B) is satisfied because the claim asserted in the First Amended Complaint against the YCPB arose out of the same conduct or occurrence that is the basis of the original complaint. Second, as to the notice requirement of Rule 15(c)(1)(C), the Third Circuit has endorsed two methods of imputing notice: the "shared attorney" method and the "identity of interest" method. See Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 196-200 (3d Cir. 2001). The "shared attorney" method of imputing notice under Rule 15(c) proceeds under the assumption that where the originally named party and the party sought to be added are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." See id. at 196. The "identity of interest" method "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation" to

---

[8] The Court notes that neither party has suggested that the applicable statute of limitations does not permit relation back. See Fed. R. Civ. P. 15(c)(1)(A).

the additional party. See id. at 197 (quoting 6A Charles A. Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed. 1990)). Under the circumstances present here, where York County has ultimate oversight responsibility for the YCP, see Doc. No. 32-4 at 2, which is governed and managed by the YCPB, see 61 Pa.C.S. § 1731, the YCPB has sufficient identity of interests with York County to impute notice of Plaintiff's complaint to it for purposes of Rule 15(c). See, e.g., Ward v. Taylor, 250 F.R.D. 165, 169 (D. Del. May 19, 2008) (holding that a correctional officer in a supervisory position shared to some degree the supervisory interest of all originally named prison administrators, and so had sufficient identity of interests with those originally named defendants for purposes of notice under Rule 15(c)).

Federal Rule of Civil Procedure 15(c) also requires that, where a plaintiff amends a complaint by adding a party, the newly-added party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." See Fed. R. Civ. P. 15(c)(1)(C)(ii). The Court concludes that, in light of the fact that both York County and the YCPB have oversight and/or management responsibility for the YCP, the YCPB should have known that, but for Plaintiff's mistake, it would have been a named defendant. Further, as the entity responsible for the government and management of the YCP, the YCPB would have had notice of Plaintiff's original complaint naming the warden of YCP, as well as several other prison officials, as a defendant. Accordingly, for all of the above reasons, the Court will grant Plaintiff's motion.

## IV.    CONCLUSION

For all of the foregoing reasons, the PrimeCare Defendants' motion to dismiss, or in the alternative, for summary judgment, as to Counts I and II of Plaintiff's complaint (Doc. No. 16) will be denied, the York County Defendants' motion for summary judgment (Doc. No. 22) will

be denied, and Plaintiff's motion for leave to file an amended complaint (Doc. No. 32) will be

granted.  An appropriate Order follows.