UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD R. REILLY,<br>as Administrator of the Estate of<br>VERONIQUE AUNDREA HENRY,<br>deceased,<br><br>Plaintiff<br><br>v.<br><br>YORK COUNTY<br>and<br>BOARD OF INSPECTORS OF THE YORK<br>COUNTY PRISON<br>and<br>WARDEN MARY SABOL<br>and<br>CORRECTIONAL OFFICER LYNETTE<br>MOORE<br>and<br>CORRECTIONAL OFFICER MARIA<br>STREMMEL<br>and<br>PRIMECARE MEDICAL, INC.<br>and<br>SONYA FREY, LPN<br>and<br>AMANDA SPAHR, MA<br>and<br>JOHN DOE I<br>and<br>JOHN DOE II<br>and<br>JOHN DOE III<br>and<br>JOHN DOE IV<br>and<br>JOHN DOE V,<br><br>Defendants | CIVIL CASE NO. 1:18-cv-1803-YK<br><br>JURY TRIAL DEMANDED<br><br>JUDGE YVETTE KANE<br><br>*Electronically Filed* |

## FIRST AMENDED COMPLAINT

Plaintiff Richard R. Reilly, as Administrator of the Estate of Veronique Aundrea Henry, deceased ("plaintiff"), by and through his attorneys, Joshua A. Anstine, Esquire and the Law Offices of Dale E. Anstine, P.C.,  hereby asserts the following Complaint against defendants, York County, the Board of Inspectors of the York County Prison, Warden Mary Sabol, Correctional Officer Lynette Moore, Correctional Officer Maria Stremmel, (collectively "correctional officer defendants"), and PrimeCare Medical Inc., Sonya Frey, LPN, and Amanda Spahr, MA, (collectively "medical defendants"), and John Does I-V (all defendants collectively "defendants") as follows:

### Parties

1.      Plaintiff Richard R. Reilly is the Administrator of the Estate of Veronique Aundrea Henry, deceased ("Ms. Henry").   Ms. Henry was at all material times a resident of York County, Pennsylvania.

2.      Defendant York County is a Municipality of the Commonwealth of Pennsylvania and is an incorporated county within the Commonwealth of Pennsylvania with a population of approximately 440,000 residents, thereby making it a County of the Third Class pursuant to 16 P.S. § 210.  Defendant York County has direct oversight responsibility for York County Prison pursuant to the organizational chart of York County promulgated in Chapter 73 of the York County Ordinances.  *See* Exhibit B, filed herewith.

3.      Defendant Board of Inspectors of the York County Prison ("York County Prison Board" or "Prison Board") was established pursuant to 61 Pa. C.S. § 1731 for the purpose of "provid[ing] for the safekeeping, discipline, and employment of inmates and the government and management of the correctional institution." *Id.*

4.      At all times relevant hereto, York County and/or the Prison Board employed

3

Warden Mary Sabol, Correctional Officer Lynette Moore and Correctional Officer Maria Stremmel.

5.    Defendant Warden Mary Sabol ("defendant Sabol") was at all times relevant to this action an agent of York County and/or the Prison Board.

6.    Defendant Correctional Officer Lynette Moore ("defendant Moore") was at all times relevant to this action an agent of York County and/or the Prison Board and a correctional officer at YCP.  She is being sued in her individual capacity as an officer of YCP and York County and/or the Prison Board.

7.    Defendant Correctional Officer Maria Stremmel ("defendant Stremmel") was at all times relevant to this action an agent of York County and/or the Prison Board and a correctional officer at YCP.  She is being sued in her individual capacity as an officer of YCP and York County.

8.    Defendant PrimeCare Medical Inc. ("defendant PrimeCare") is a Pennsylvania corporation with its principal place of business located at 3940 Locust Lane, Harrisburg, PA.  At all times relevant hereto, PrimeCare was the contracted agent of YCP and York County and/or the Prison Board, and was responsible for providing staff and overseeing medical treatment to inmates at YCP.  At all times material hereto, PrimeCare acted and failed to act by, through and on behalf of its duly authorized agents, ostensible agents, servants and employees, including, but not limited to, Sonya Frey, LPN, and Amanda Spahr, MA.

9.    Defendant Sonya Frey, LPN ("defendant Frey") was at all times relevant to this action a duly licensed practicing nurse at YCP in York, PA.

10.    At all times material hereto, defendant Frey was a treating nurse acting individually and/or as an agent, ostensible agent, servant and/or employee of York County and/or the Prison Board and PrimeCare.

4

11.    Defendant Amanda Spahr, MA ("defendant Spahr") was at all times relevant to this action a medical assistant practicing at YCP in York, PA.

12.    At all times material hereto, defendant Spahr was a treating medical assistant acting individually and/or as an agent, ostensible agent, servant and/or employee of York County and/or the Prison Board and PrimeCare.

13.    Defendants John Does I-V are medical providers practicing at YCP in York, PA and/or correctional officers or other prison personnel at YCP.

14.    At all material times, defendants, York County and/or the Prison Board were charged with the responsibility of providing adequate medical care and to and protecting the pretrial detainees/inmates housed at YCP, including Ms. Henry, and delegated that constitutional duty to defendants, the Prison Board, PrimeCare and/or Warden Mary Sabol, as well as their employees.

**Jurisdiction**

15.    This action is brought pursuant to 42 United States Code Section 1983. Jurisdiction is based upon 28 United States Code 1331, 1341 (1), (3) and (4), and 1343(a)(3), and 1343(a)(4).  Plaintiff further invokes the supplemental jurisdiction under 28 United States Code Section 1376(a) to hear and decide claims under state law.

**Facts**

16.    On September 14, 2016, at approximately 10:30 p.m., Ms. Henry was admitted to YCP following an arrest for a number of alleged crimes.

17.    Upon admission to YCP, defendant Moore, defendant Stremmel, and/or other John Doe correctional officers moved Ms. Henry to the medical holding tank because they were concerned she would commit suicide.

18.    Defendant Moore was familiar with Ms. Henry from previous incarcerations and specifically noted that on this occasion Ms. Henry appeared to be acting very solemn and differently, in a manner that made defendant Moore concerned Ms. Henry might hurt herself.

19.    As a result of Ms. Henry's previous incarcerations, all defendants knew she had an existing mental health condition and that she had been on medication for mental health issues, including depression.

20.    Upon information and belief, all defendants knew that during Ms. Henry's previous incarcerations, she had asked to speak with a psychiatrist or other mental health medical provider and that she had previously contemplated suicide.

21.    The known concern that Ms. Henry would commit suicide was so great that defendant Moore, in consultation with defendant Stremmel and/or other John Doe correctional officers, called the YCP medical staff and requested that a nurse speak with Ms. Henry to evaluate her for suicide precautions.

22.    On September 14, 2018 at approximately 11:15 p.m., defendant Frey proceeded to question Ms. Henry in the medical holding tank in the presence of defendant Moore and defendant Stremmel.

23.    All defendants knew that Ms. Henry had been admitted to YCP on serious charges and was therefore facing possible incarceration for a substantial period of time, to include a potential life sentence.

24.    Ms. Henry stated that she had a husband and two children and that her husband was very physically and mentally abusive to her.

25.    Ms. Henry stated that she took Paxil for anxiety before being admitted to YCP.

26.    Defendant Moore and defendant Stremmel knew Ms. Henry from her prior incarcerations and believed that Ms. Henry was going to commit suicide.

27.    Defendant Moore and defendant Stremmel told defendant Frey that they believed Ms. Henry should be on suicide watch because they were concerned should was going to attempt to commit suicide.

28.    Defendant Frey knew she was not qualified to perform a mental health assessment or a suicide assessment, yet proceeded to perform one anyway.

29.    None of the defendants placed Ms. Henry on suicide watch or had Ms. Henry promptly evaluated by a psychiatric specialist or other mental health provider.

30.    PrimeCare knew that defendant Frey was not qualified to perform a mental health assessment.

31.    On September 14, 2015 at approximately 11:50 p.m., Ms. Henry underwent the standard intake medical screen, which was performed by defendant Spahr.

32.    Defendant Spahr knew she was not qualified to perform a mental health assessment or suicide assessment, yet proceeded to perform one anyway.

33.    PrimeCare knew that defendant Spahr was not qualified to perform a mental health assessment.

34.    Defendant Spahr noted that Ms. Henry's prior incarcerations included problems related to "psychological/mental health segregation psychological/medication-assessment substance abuse".

35.    Ms. Henry told defendant Spahr that she had experienced a significant loss within the last six months (e.g. loss of job, loss of relationship, death of close family member).

36.    Ms. Henry told defendant Spahr that she was very worried about major problems other than her legal situation (e.g. financial or family problems, a medical condition, fear of losing job).

37.    Ms. Henry told defendant Spahr that she has a mental health treatment history as

well as a history of drug or alcohol abuse.

38.    Ms. Henry told defendant Spahr that she was addicted to several medications including Xanax and Percocet.  Opiate withdrawal was identified as a one of Ms. Henry's problems at the time of the medical screen.

39.    Ms. Henry told defendant Spahr she felt she needed to see a mental health provider.

40.    Ms. Henry told defendant Spahr that she suffered a head injury in a motor vehicle accident earlier that day.

41.    Upon information and belief, defendant Spahr knew that defendants Moore and Stremmel believed Ms. Henry was going to commit suicide and did not document this as part of the medical screen.

42.    Despite these clear signs that Ms. Henry had a particular vulnerability to suicide, and knowledge of that vulnerability, no defendants placed Ms. Henry on suicide watch, no defendants took steps to make sure Ms. Henry was seen by a mental health professional and no defendants too any steps to make sure Ms. Henry was subject to appropriate restrictions or observation to prevent her from harming herself.

43.    Ms. Henry was transferred to cell #4B on September 15, 2016 at approximately 12:14 a.m.

44.    At approximately 10:11 a.m. on September 15, 2016, Ms. Henry was found hanging in her cell from a white bed sheet and was pronounce dead that same day.

45.    Prior to Ms. Henry's suicide, the YCP was plagued with instances where sufficient precautions were not taken to prevent inmates from taking their own lives.

46.    According to published accounts of the YCP suicide prevention problems, inmate Michael Lowery hung himself in a staff bathroom in 2009, detainee Tiombe Carlos took her own

life in 2013 and two female inmates – Megal Fritz and Mary Knight – committed suicide within a four-day period in 2014. See the December 17, 2016 article published by the York Daily Record attached as Exhibit A.

47.    Upon information and belief, PrimeCare was responsible for providing medical care, including suicide precautions, at the time of the YCP suicides referred to in the preceding paragraphs. Moreover, PrimeCare has failed to provide adequate suicide precautions and training in countless instances of inmate suicide in prisons where PrimeCare operates throughout the Commonwealth of Pennsylvania and nationally.

48.    The fact that Ms. Henry was particularly vulnerable to suicide constitutes a serious medical need.

49.    The failure of York County and/or the Prison Board and the correctional officer defendants to ensure that proper medical treatment and attention was provided to Ms. Henry and that she was properly monitored despite knowing that suicide was a serious risk under the circumstances resulted in Ms. Henry's death.

50.    At no time did any of the defendants, or any other employees of defendants York County and/or the Prison Board or PrimeCare, take steps to ensure that Ms. Henry was placed on a suicide watch.

51.    The correctional officer defendants, PrimeCare and the medical defendants were on notice of Ms. Henry's need for immediate medical attention and, with deliberate indifference, failed to take steps to ensure that she received the necessary care and treatment with a psychiatric specialist or other mental health provider.

52.    The correctional officer defendants, PrimeCare and the medical defendants were on notice of Ms. Henry's need for observation while in her cell and, with deliberate indifference, failed to take steps to ensure that she received the necessary observation.

9

53.    In light of their knowledge and/or observation of Ms. Henry's condition and the need for immediate treatment with a psychiatric specialist or other mental health provider, and in accordance with generally accepted standards of medical care, all medical defendants should have taken steps to ensure that Ms. Henry receive the necessary care and attention with a psychiatric specialist or other mental health provider.

54.    In light of their knowledge and/or observation of Ms. Henry's condition and the need for immediate treatment with a psychiatric specialist or other mental health provider, and in accordance with generally accepted standards of medical care, all medical defendants should have taken steps to ensure that Ms. Henry was placed under observation upon her admission to YCP, until she was evaluated by a psychiatric specialist or other mental health provider.

55.    In light of their knowledge and/or observation of Ms. Henry's condition, the need for immediate treatment with a psychiatric specialist or other mental health provider, and the risk of suicide associated therewith, and in accordance with generally accepted standards, York County and/or the Prison Board and the correctional officer defendants should have taken steps to ensure that Ms. Henry was placed on a suicide watch and that she receive the necessary care and attention with a psychiatric specialist or other mental health provider.

56.    At all times relevant to this Complaint, defendants York County and/or the Prison Board, PrimeCare, Sabol and John Doe defendants, with deliberate indifference, failed to develop and implement policies, practices, and procedures to ensure that Ms. Henry would receive proper follow-up care, psychiatric intervention and be placed on suicide watch.

57.    The harms suffered by Ms. Henry are the direct and proximate result of the policy, practice, and custom of defendants York County and/or the Prison Board, PrimeCare, Sabol and John Doe defendants of refusing or delaying inmates' necessary treatment with medical specialists, or otherwise interfering with such treatment and the placement of inmates on

10

suicide watch.

58.    Defendants York County and/or the Prison Board, PrimeCare, Sabol and/or John Doe defendants failed to take steps to ensure that information regarding inmates such as Ms. Henry – including but not limited to the inmates' reports of injuries, the results of examinations and tests, and the diagnoses of disorders – were promptly communicated to the inmates' other medical and mental health providers working in YCP as well as correctional officers and administrators so that medical services and placement on suicide watch were coordinated in such a way as to have avoided the harm sustained by Ms. Henry.

59.    At all times relevant to this Complaint, all defendants were deliberately indifferent to the serious medical needs of Ms. Henry.

60.    At all times relevant to the Complaint, all defendants were state actors acting under the color of state law and the conduct of all defendants, their agents, servants and/or employees, was intentional, willful, reckless, and grossly negligent with respect to Ms. Henry's rights under federal and state law.

61.    Ms. Henry's death was a direct and proximate result of defendants' conduct.

62.    Without any regard for Ms. Henry's safety, defendants ignored Ms. Henry's medical condition and denied her medical treatment that she desperately needed

63.    Without any regard for Ms. Henry's safety, defendants ignored Ms. Henry's medical condition and failed to place her on a suicide watch despite knowing that there was a strong likelihood she would commit suicide.

64.    Defendants failed to protect Ms. Henry and knowingly failed to provide her with medical treatment that she desperately needed.

65.    As a direct and proximate result of the defendants' actions, Ms. Henry was deprived of rights, privileges and immunities under the Fourth, Fifth, Eight and Fourteenth

Amendments to the United States Constitution and in particular the right to be free from cruel and unusual punishment, the right to be provided proper and adequate medical treatment and the right to due process of law.

**COUNT ONE**
**Plaintiff v. Correctional Officer Defendants and Medical Defendants**
**Federal Constitutional Claims**

66.     Plaintiff hereby incorporates the allegations contained in paragraphs 1 through **65**, inclusive, of his Complaint as if the same were set forth at length herein.

67.     The correctional officer defendants and medical defendants, as well as John Does I-V were deliberately indifferent to Ms. Henry's serious medical needs and thereby violated Ms. Henry's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Ms. Henry's right to due process of law under the Fourteenth Amendment to the United States Constitution.

68.     As alleged above, the correctional officer defendants and the medical defendants knew that Ms. Henry was particularly vulnerable to suicide and that there was a strong likelihood that she would attempt suicide, and notwithstanding the knowledge of a significant risk to Ms. Henry's health and safety, they were deliberately indifferent by failing to take any action or precaution to prevent Ms. Henry from hanging herself, such as placing her on suicide watch or providing her adequate psychiatric care and treatment.

69.     The risk of suicide attempt by Ms. Henry was obvious and/or known to defendants.

70.     The correctional officer defendants and the medical defendants intentionally and/or with deliberate indifference ignored this risk and allowed Ms. Henry to hang herself.

71.     Ms. Henry's death was a direct result of the actions and inactions of these defendants.

**COUNT TWO**
**Plaintiff v. Defendants York County and/or the Prison Board, PrimeCare and Sabol**
**Federal Constitutional Claims**

72.     Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 71, inclusive, of his Complaint as if the same were set forth at length herein.

73.     As a direct and proximate result of all defendants' conduct, committed under color of state law, and the deliberate indifference of defendants York County and/or the Prison Board, PrimeCare, Sabol and John Doe defendants to Ms. Henry's serious medical needs, Ms. Henry was denied the right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or to due process of law under the Fourteenth Amendment to the United States Constitution.  As a result, Ms. Henry suffered harm in violation of her rights under the laws and Constitution of the United States, in particular the Eighth and Fourteenth Amendments, and 42 U.S.C. §1983.

74.     The violations of Ms. Henry's constitutional rights, Ms. Henry's damages, and the conduct of the individual defendants were directly and proximately caused by the deliberate indifference of York County and/or the Prison Board, PrimeCare, Sabol and John Doe defendants to the need for training, supervision, investigation, monitoring, or discipline with respect to the provision of specialized medical care to inmates.

75.     The Plaintiff believes and therefore avers that the defendants York County and/or the Prison Board, PrimeCare, Sabol and John Doe defendants have adopted and maintained for many years a recognized and accepted policy, custom, and practice of condoning and/or the acquiescence of the deliberate indifference to serious medical needs of inmates, and subjecting them to the same type of treatment to which Plaintiff was subjected, which policy violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42

U.S.C. § 1983.

76.     The aforementioned unconstitutional policy, custom and practice includes failing to provide adequate policies and procedures for identifying persons who are high suicide risks, and failing to have adequate policies and procedures for addressing persons who are suicidal, such as placing them on suicide watch and providing them with adequate psychiatric medical care.

77.     The aforementioned unconstitutional policy, custom and practice includes knowingly and intentionally allowing medical personnel to provide care and treatment, including but not limited to mental health assessments, which they are not qualified to provide.

78.     The aforementioned unconstitutional policy, custom and practice includes knowingly and intentionally violating regulations set forth by the Pennsylvania Department of State regarding the permitted treatments rendered by and supervision of medical assistants, LPNs and RNs.

79.     The aforementioned unconstitutional policy, custom and practice is based on defendants' desire to save money by not providing the required medical care and treatment and also a systemic belief that prisoners are manipulative and the psychiatric needs, even where a person is suicidal, does not warrant medical care and treatment.

80.     Plaintiff believes and therefore avers that the defendants York County and/or the Prison Board, PrimeCare, Sabol, and/or John Doe defendants have adopted and maintained for many years a recognized and accepted policy, custom, and practice of failing to adequately train prison and medical staff employees regarding the warning signs of potential suicides, and failing to adequately train them regarding the necessary precautions to avoid suicides, and of failing to discipline employees who allow suicides to occur on their watch.

81.     Defendants York County and/or the Prison Board, PrimeCare, Sabol, and/or John Doe defendants, have been deliberately indifferent to the rights of inmates at YCP to be provided with essential medical care, which deliberate indifference violated Ms. Henry's rights under the Due

Process Clause of the Fourteenth Amendment of the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. § 1983.

82.    Plaintiff believes and therefore avers, that at the time of the aforementioned incident, defendants, defendants York County and/or the Prison Board, PrimeCare, Sabol, and/or John Doe defendants, knew or should have known of the above described policy and that it deliberately, knowingly, and/or negligently failed to take measures to stop or limit the policy, including, inter alia, providing proper training, supervision, and control of the officers, agents, and/or employees of YCP and/or PrimeCare.

83.    By failing to take action to stop or limit the policy and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the policy, defendants York County and/or the Prison Board, PrimeCare, Sabol, and/or John Doe defendants, condoned, acquiesced in, participated in, and perpetrated the policy in violation of Ms. Henry's rights under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and was in violation of 42 U.S.C. § 1983.

84.    The violations of Ms. Henry's constitutional rights, Ms. Henry's damages, and the conduct of the individual defendants were directly and proximately caused by the encouragement, tolerance, ratification of, and/or deliberate indifference of defendants York County and/or the Prison Board, PrimeCare, Sabol, and/or John Doe defendants to, policies, practices, and/or customs of refusing, delaying, failing to coordinate, or otherwise interfering with inmates' necessary treatment with medical specialists.

85.    The violations of Ms. Henry's constitutional rights, Ms. Henry's damages, and the

15

conduct of the individual defendants were directly and proximately caused by the failure of

defendants, defendants York County and/or the Prison Board, PrimeCare, Sabol, and/or John

Doe defendants, with deliberate indifference, to develop and implement policies, practices, and

procedures to ensure that inmates receive proper follow-up medical care or medical care from

medical specialists and to ensure that inmates are placed on a suicide watch when necessary.

86.    Ms. Henry's death was a direct result of the actions and inactions of these

defendants.

**COUNT THREE**
**Plaintiff v. Medical Defendants, PrimeCare and York County and/or the Prison Board**
**State Law Negligence Claims**

87.    Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 85,

inclusive, of his Complaint as if the same were set forth at length herein.

88.    The medical defendants had a duty to comply with generally accepted medical

standards of care in their treatment of Ms. Henry.

89.    The medical defendants violated their duty of care to Ms. Henry.

90.    The medical defendants' acts and omissions constitute willful misconduct and/or

gross negligence.

91.    The medical defendants' violations of their duty of care to Ms. Henry was a direct

and proximate cause and a substantial factor in bringing about Ms. Henry's damages outlined

above, and, as a result, the medical defendants are liable to plaintiff.

92.    As the individual medical defendants were acting as agents, servants, and/or

employees of York County and/or the Prison Board and/or PrimeCare, and were acting within

the scope and course of their employment, and under the direct control and supervision of York

County and/or the Prison Board and/or PrimeCare, York County and PrimeCare are liable to

plaintiff on the basis of *respondeat superior* liability.

**COUNT FOUR**
**Plaintiff v. Defendants**
**<u>Wrongful Death</u>**

93.    Plaintiff hereby incorporates by reference the allegations contain in paragraphs 1 through 92, inclusive, of his Complaint, as if the same were set forth in full herein.

94.    As a result of the aforesaid negligent acts and/or omissions of defendants resulting in Ms. Henry's death, Ms. Henry's survivors have suffered damages for pecuniary loss including but not limited to the following:

  a. funeral, burial and estate administrative expenses;

  b. medical expenses; and

  c. such other pecuniary losses recoverable under the Wrongful Death Act and applicable Pennsylvania law.

95.    As a result of the aforesaid negligent acts and/or omissions of defendants resulting in Ms. Henry's death, Ms. Henry's survivors have suffered, and will continue to suffer for an indefinite time in the future, and claim damages for losses including but not limited to the following:

  d. loss of the pecuniary value of the services, society, comfort, companionship, maintenance, guidance, tutelage, moral upbringing, support, protection and enjoyment which decedent would have provided for the remainder of decedent's natural life; and

  e. such other pecuniary contributions the survivors could have expected to receive from the decedent and were caused to lose as a direct and proximate result of defendants negligence and carelessness; and

  f. such other losses recoverable under applicable Pennsylvania law.

96.    On behalf of the Wrongful Death beneficiaries, the Administrator claim damages for the monetary support the decedent would have provided to the beneficiaries during her lifetime.

**COUNT FIVE**
**Plaintiff v. Defendants**

**<u>Survival Action</u>**

97.    Plaintiff hereby incorporates by reference the allegations contain in paragraphs 1 through 96, inclusive, of his Complaint, as if the same were set forth in full herein.

98.    Plaintiff claims damages for the pain and mental suffering undergone by Ms. Henry prior to her death, and the loss of earning capacity suffered by Ms. Henry from the time of her injury until such time as she probably would have lived had she not died as a result of the defendants' negligence as described above.

99.    Plaintiff brings this action on behalf of the Estate of Veronique Aundrea Henry, deceased, pursuant to the Pennsylvania Survival Act, 42 Pa.C.S.A. Section 8302 and claims all damages encompassed thereby on behalf of said Estate.

**<u>REQUESTED RELIEF</u>**

Wherefore, Plaintiff respectfully requests:

1. Compensatory damages;

2. Punitive damages against the individual defendants and PrimeCare;

3. Reasonable attorneys' fees and costs;

4. Such other and further relief as may appear just and appropriate.

5. Plaintiff hereby demands a jury trial as to each count and each defendant.


Respectfully Submitted,


/s/ Leticia C. Chavez-Freed
Leticia C. Chavez-Freed, Esq.
PA Bar ID 323615
THE CHAVEZ-FREED LAW OFFICE
2600 N. 3rd Street, 2nd Floor
Harrisburg, PA. 17110
(717) 893-5698
(717) 893-5873 (fax)
LETICIA@CHAVEZ-FREEDLAW.COM

/s/ Joshua A. Anstine
Joshua A. Anstine, Esq.
PA Bar ID 312722
Two West Market Street
P.O. Box 952
York, PA 17405
(717) 846-0606
(717) 845-7431 (fax)
JANSTINE@4ANSTINE.COM

*Counsel for Plaintiff*