## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD R. REILLY, as<br>Administrator of the Estate of<br>VERONIQUE AUNDREA HENRY,<br>deceased,<br>              Plaintiff<br><br>              v.<br>YORK COUNTY<br>and<br>BOARD OF INSPECTORS OF<br>THE YORK COUNTY PRISON<br>and<br>WARDEN MARY SABOL<br>and<br>CORRECTION OFFICER<br>LYNETTE MOORE<br>and<br>CORRECTION OFFICER<br>MARIA STREMMEL<br>and<br>PRIMECARE MEDICAL, INC.<br>and<br>SONYA FREY, LPN<br>and<br>AMANDA SPAHR, MA<br>and<br>JOHN DOES I - V<br>              Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 1:18-CV-01803-YK<br><br><br>THE HONORABLE<br>YVETTE KANE<br><br><br>JURY TRIAL DEMANDED |

## STATEMENT OF MATERIAL FACTS

# LIST OF EXHIBITS

# STATEMENTOF MATERIAL FACTS

Exhibit "A"        Suicide Prevention, Exhibit "H" of Deposition of Clair Doll

Exhibit "B"        Affidavit of Clair Doll, Warden

Exhibit "C"        Affidavit of Captain Bernard Seigman

Exhibit "D"        Affidavit of Lynette Lanasa, a/k/a Lynette Moore

Exhibit "E"        Deposition Excerpts of Lynette Moore

Exhibit "F"        Deposition Excerpts of Clair Doll

Exhibit "G"        Deposition Excepts of Warden Mary Sabol

Exhibit "H"        Affidavit of Maria Stremmel

Exhibit "I"        Expert Report of Michael T. Puerini, M.D.

The Defendants York County, Board of Inspectors of the York County Prison, Warden Mary Sabol, Correction Officer Lynette Moore, and Correction Officer Maria Stremmel submit the following Statement of Material Facts for which it is contended that there is no genuine issue to be tried as required by Middle District Local Rule 56.1.

1.

The Defendant York County is a third class county in Pennsylvania and has, pursuant to the Act of August 11, 2009, P.L. 147, 33, Section 7, 61 Pa.C.S.A. §1731 et seq., composed a Board of Inspectors of the County known as the York County Prison Board.

2.

The York County Prison Board is composed of: (1) a Judge designated by the present Judge of the Court of Common Pleas, (2) the District Attorney, (3) the Sheriff for the Controller, and (4) the County Commissioners.

3.

The York County Prison Board is required by law and has the exclusive responsibility to provide for the safekeeping, discipline, and employment of inmates, and the government and management of the York

County Correction institution and to make such rules and regulations for the government and management of the County Correction Institute and the safekeeping, discipline, and employment of the inmates as may be deemed necessary. 61 Pa.C.S.A. §1732(b)(1).

4.

In September 2014, York County Prison staff had a suicide policy to follow that was approved by the York County Prison Board. The policy was based upon the philosophy of making every effort to identify, intervene, and "prevent suicides from occurring". See Exhibit "A", Deposition of Clair Doll, August 18, 2020, Exhibit "H" attached to the end of deposition.

5.

Inmate Veronique Aundrea Henry (hereinafter referred to as "Inmate Henry") was confined in the York County Prison for pre-trial confinement on September 14, 2016. "Inmate Henry" was awaiting trial on the charges of criminal homicide, burglary, robbery, criminal attempt homicide, aggravated assault with serious bodily injury, simple assault, and theft. See Exhibit "B", Affidavit of Warden Clair Doll.

3

6.

On September 14, 2016, Captain Bernard Seigman worked until 10:30 p.m. Before leaving the prison, Captain Seigman consulted with two female Correction Officers, Lynette Moore and Maria Stremmel. They discussed the admission of "Inmate Henry" to the York County Prison. It was agreed that placing "Inmate Henry" on suicide watch was appropriate. Captain Seigman agreed with both the female Correction Officers but since his shift was over, he left the York County Prison and took no further action. See Exhibit "C", Affidavit of Captain Bernard Seigman.[1]

7.

This was the sixth incarceration at the York County Prison for "Inmate Henry". See Exhibit "B", Affidavit of Warden Clair Doll.

8.

At about 11:15 p.m. on September 14, 2016, Correction Officer Lynette Moore contacted Nurse Sonya Frey to determine whether or not "Inmate Henry" should be placed on suicide watch. See Exhibit "D", Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa, Exhibit

---

[1] Note: The Affidavit of Captain Bernard Seigman was filed with the Statement of Material Facts on November 16, 2018, but the Statement of Material Facts failed to identify the Affidavit.

4

"B", Affidavit of Warden Clair Doll and Exhibit "E", Deposition of Lynette Moore, July 1, 2020, pp. 17, 18, 19, 20, 21.

9.

After performing a suicide assessment, Nurse Sonya Frey, a qualified medical staff member at the York County Prison, determined that it was inappropriate to put "Inmate Henry" on a suicide watch. See Exhibit "B", Affidavit of Warden Clair Doll.

10.

During the assessment, "Inmate Henry" was not crying, she was solemn. "Inmate Henry" also, on being questioned, said she did not want to kill herself. Correction Officer Lynette Moore contacted a Captain because of the severity of the charges. See Exhibit "E", Deposition of Lynette Moore, July 1, 2020, p. 19.

11.

When asked, "was there anything about "Inmate Henry's" behavior on the night of the 14th that gave you pause or made you believe that you would not see her again"? The answer was "no". See Exhibit "E", Deposition of Lynette Moore, July 1, 2020, p. 24.

12.

Correction Officer Lynette Moore verified the correctness of her Affidavit, amended hereto. See Exhibit "E", Deposition of Lynette Moore, July 1, 2020, p. 28.

13.

At 11:52 p.m. on September 14, 2016, a PrimeCare qualified medical staff member performed a suicide screen on "Inmate Henry". "Inmate Henry" passed this screen and the conclusion was that it was not necessary to place her on a suicide watch. See Exhibit "B", Affidavit of Warden Clair Doll.

14.

The training of Correction Officers of the York County Prison on September 14, 2016 included the need to recognize that inmates who were identified at risk for significant self-harm or suicide were to be reported to the medical staff. All Correction Officers were trained to be aware of any inmate conversation or conduct that suggested a present risk of suicide. Any sign of suicidal behavior was to be reported and evaluated by qualified medical staff personnel situate in the York County Prison. See Exhibit "B", Affidavit of Warden Clair Doll.

6

15.

Warden Clair Doll identified and explained the County's suicide policy, which is amended to his deposition as Exhibit "H". The concept that there was a custom of policy of reckless indifference by the correction officers is denied. See Exhibit "F", Deposition of Clair Doll, August 18, 2020, pp. 22, 23, 24.

16.

The York County Prison's written policy on suicide prevention contained specific provisions that defined **actively suicidal** as:

> Inmates, who take steps to commit suicide, are engaged in self-harm or present with a specific plan for committing suicide.

And **potentially suicidal** as:

> Inmates who are not actively suicidal, but express suicidal ideation and/or have a recent history of self-destructive behavior.

See Exhibit "A", Deposition of Clair Doll, August 18, 2020, Exhibit "H" attached to the end of deposition, II. Definitions, page 2.

17.

Under the Suicide Prevention Program, both Correction Officer Stremmel and Correction Officer Moore and the other York County

Defendants were in compliance with this provision. There is no evidence that suggested to them that "Inmate Henry" was either actively or potentially suicidal.

18.

Only the licensed medical staff, whose professionals are provided by PrimeCare Medical, Inc., can place an inmate on psychiatric observation or remove them from that status in the York County Prison. It is the responsibility of the contract medical provider to do the evaluation and make the decisions concerning housing status of an inmate who is presenting suicide risks. See Exhibit "B", Affidavit of Warden Clair Doll.

19.

The difficulty of balancing suicide prevention with providing humane confinement is very difficult. York County Prison is a detention center, not a hospital. Security must be provided to the detained inmates while providing protection for the staff, public, and inmates from self-inflicted and other person inflicted harm. See Exhibit "B", Affidavit of Warden Clair Doll.

20.

Putting a person who is diagnosed as suicidal, and placed on "suicide watch", experiences an extreme detention status. All of the privileges are

8

taken from the inmate. They are simply given a gown and a blanket, confined, and "watched". This kind of treatment preserves the life of the inmate but it creates a substantial hardship for the inmate. So, in the prison, the medical section in conjunction with the prison administrative staff, have recognized that it is important to balance the inmate's safety with the inmate's wellbeing. Consequently, an inmate would never be put on suicide watch unless there was a valid medical reason to do so. Qualified medical staff is required to use their clinical judgment in assessing an appropriate level of confinement for a mentally disabled inmate. See Exhibit "B", Affidavit of Warden Clair Doll and Exhibit "F", Deposition of Clair Doll, August 18, 2020, pp. 22, 23, 24, 39, 40, 41, 42.

21.

Mary Sabol affirmed that the York County Prison had suicide policies to address suicide prevention. The prison's policies were developed under ICE standards and other national standards. See Exhibit "G", Deposition of Mary Sabol, June 30, 2020, pp. 25, 26.

9

22.

Mary Sabol, when acting as Warden, the policies were being complied with by the prison staff. See Exhibit "G", Deposition of Mary Sabol, June 30, 2020, pp. 25, 26.

23.

A second assessment was done two times by qualified medical personnel during the confinement of "Inmate Henry" before her unexpected death on September 15, 2016. See Exhibit "B", Affidavit of Warden Clair Doll.

24.

Correction Officer Lynette Moore was working at the York County Prison on the 4:00 p.m. to midnight shift and was assigned to the Female Max area at the York County Prison.

25.

"Inmate Henry" was admitted to the York County Prison and transferred to the Female Max area late in the evening on September 14, 2016.

26.

Correction Officer Maria Stremmel and Correction Officer Lynette Moore believed, as a matter of intuition and based upon the serious charges filed against "Inmate Henry", that she should be considered for being placed on suicide watch. See Exhibit "D", Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa, and Exhibit "H", Affidavit of Correction Officer Maria Stremmel.

27.

Both Correction Officers, believing that a suicide watch was appropriate, requested a qualified medical professional to come to the holding cell at Female Max to make a suicide risk assessment of "Inmate Henry".

28.

In the presence of both Correction Officers, Nurse Sonya Frey, after an assessment of "Inmate Henry", determined that she was not suicidal and should not be put on suicide watch.

29.

A summary of the assessment is set forth on Exhibit "B", attached to the Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa (Exhibit "D").

30.

Following the assessment and determination by Nurse Sonya Frey, Correction Officer Lynette Moore and Correction Officer Maria Stremmel felt strongly, because of a feeling that they had, that "Inmate Henry" should be placed on suicide watch. See Exhibit "D", Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa, and Exhibit "H", Affidavit of Correction Officer Maria Stremmel.

31.

Nurse Sonya Frey indicated that she had no bad feelings and that in her judgment this was not an inmate who should be put on suicide watch but advised the two Correction Officers that if they felt strongly about it, they could tell their Captain to override her. See Exhibit "D", Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa, and Exhibit "H", Affidavit of Correction Officer Maria Stremmel.

32.

Both of the Correction Officers filed their concerns with a Captain but because it was at the end of their shift, they left the York County Prison. Both Correction Officers did not believe that "Inmate Henry" was an imminent danger of committing suicide and their belief was that suicide watch was just an appropriate precaution. See Exhibit "D", Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa, and Exhibit "H", Affidavit of Correction Officer Maria Stremmel.

33.

Both Correction Officers were present during the assessment of "Inmate Henry" and provided Affidavits to confirm that she did not do anything or say anything which constituted evidence of a threat to take her own life. See Exhibit "D", Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa, and Exhibit "H", Affidavit of Correction Officer Maria Stremmel.

34.

Both Correction Officers also read the Complaint filed by the Plaintiff in this case and categorically denied the fact that they knew from prior confinement or from the medical history of "Inmate Henry" that she was a

suicidal risk. See Exhibit "D", Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa, and Exhibit "H", Affidavit of Correction Officer Maria Stremmel.

35.

Both Correction Officers testified that they viewed suicide watch as the best way to protect an inmate from a "possible risk". Both Correction Officers indicated they reported their feelings to their superiors believing that this is what they were required to do. See Exhibit "D", Affidavit of Correction Officer Lynette Moore, a/k/a Lynette Lanasa, and Exhibit "H", Affidavit of Correction Officer Maria Stremmel.

36.

Only the licensed medical staff, whose professionals are provided by PrimeCare, can place an inmate on psychiatric observation or remove them from that status in the York County Prison. It is the responsibility of the contract medical provider to do the evaluation and make the decisions concerning housing status of an inmate who is presenting suicide risks. See Exhibit "B", Affidavit of Warden Clair Doll.

37.

Medically qualified personnel decided that "Inmate Henry" was not a suicide risk. See Exhibit "B", Affidavit of Warden Clair Doll.

38.

"Inmate Henry" was moved to female pre-classification C-Pod at 12:14 a.m. on September 15, 2016. "Inmate Henry" was served breakfast at 6:51 a.m. but refused to eat. At 7:32 a.m., "Inmate Henry" left her cell, went to the pod door and spoke to an officer and obtained some toiletries. At 7:40 a.m. to 7:55 a.m., "Inmate Henry" took a shower. At 7:55 a.m., "Inmate Henry" returned to her cell. At 8:28 a.m., "Inmate Henry" left her cell and went to another cell. "Inmate Henry" returned a minute later. At 9:21 a.m., "Inmate Henry" received medication at the pod door and returned to her cell. At 10:07 a.m., three staff members entered the pod to make a repair to a telephone. See Exhibit "B", Affidavit of Warden Clair Doll.

39.

At 10:11 a.m., during a clock round, Correction Officer Maria Nalls found "Inmate Henry" in her cell with a sheet around her neck and the sheet tied to a cell window. A medical emergency was called, the staff

removed "Inmate Henry" from the sheet, performed life saving measures until PrimeCare Medical arrived and assisted. See Exhibit "B", Affidavit of Warden Clair Doll.

40.

An investigation into the facts indicated that "Inmate Henry" was not segregated and was in general population. "Inmate Henry" did not make any suicidal statements to anyone during her activities that preceded her suicide attempt (attending medication pass, showering, talking to staff, etc.). "Inmate Henry" did not lead the staff to believe that there was a risk of suicide. See Exhibit "B", Affidavit of Warden Clair Doll.

41.

Plaintiff's expert report that purports to establish liability on the basis of medical negligence and the expert's legal conclusions is attached as Exhibit "I", Report of Michael T. Puerini, M.D.

42.

York County Defendants suggest that the opinions of Plaintiff's expert witness fail to recognize the requirements that are needed to establish 1983 liability. In addition, the opinions of the medical doctor fail to recognize that, under the Federal law and the law of Pennsylvania, the

York County Defendants are not physicians and are, therefore, not subject to a medical standard of care. Finally, even if negligence were present, all the York County Defendants are entitled to governmental immunity under State law.

Respectfully submitted,

By:   /s/ Donald Reihart, Esquire
Donald L. Reihart, Esq.
Sup. Ct. I.D. #07421
28 E. Market Street 2nd Floor
York, PA  17401
Telephone:  (717)755-2799
Email:  email@reihartlaw.com
dlreihart@yorkcountypa.gov
Assistant Solicitor for the
County of York and
Solicitor for the York County Prison

Dated: February 8, 2017      Counsel for York County Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD R. REILLY, as                    :
Administrator of the Estate of           :
VERONIQUE AUNDREA HENRY,                  :
deceased,                                :       No. 1:18-CV-01803-YK
       Plaintiff                     :
      v.                            :
YORK COUNTY                              :
and                                      :
BOARD OF INSPECTORS OF                   :       THE HONORABLE
THE YORK COUNTY PRISON                   :       YVETTE KANE
and                                      :
WARDEN MARY SABOL                        :
and                                      :       JURY TRIAL DEMANDED
CORRECTION OFFICER                       :
LYNETTE MOORE                            :
and                                      :
CORRECTION OFFICER                       :
MARIA STREMMEL                           :
and                                      :
PRIMECARE MEDICAL, INC.                  :
and                                      :
SONYA FREY, LPN                          :
and                                      :
AMANDA SPAHR, MA                         :
and                                      :
JOHN DOES I - V                          :
      Defendants                    :

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2021, I electronically filed the foregoing Statement of Material Facts with the Clerk of Court using the CM/ECF system.

18

Joshua A. Anstine, Esquire
Sup. Ct. I.D. #PA 312722
Two West Market Street
P.O. Box 952
York, PA 17405
Attorney for Plaintiff

Leticia C. Chavez-Freed
The Chavez-Freed Law Office
2600 North 3rd Street
Harrisburg, PA 17110
Counsel for Plaintiff

                    Respectfully submitted,
                    By:    /s/ Donald Reihart, Esquire
                           Donald L. Reihart, Esq.
                           Sup. Ct. I.D. #07421
                           28 E. Market Street 2nd Floor
                           York, PA  17401
                           Telephone:  (717)755-2799
                           Email:  email@reihartlaw.com
                           dlreihart@yorkcountypa.gov
                           Assistant Solicitor for the
                           County of York and
                           Solicitor for the York County Prison
Dated: February 8, 2021    Counsel for York County Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD R. REILLY, as
Administrator of the Estate of
VERONIQUE AUNDREA HENRY,
deceased,

             Plaintiff

           v.

YORK COUNTY
and
BOARD OF INSPECTORS OF
THE YORK COUNTY PRISON
and
WARDEN MARY SABOL
and
CORRECTION OFFICER
LYNETTE MOORE
and
CORRECTION OFFICER
MARIA STREMMEL
and
PRIMECARE MEDICAL, INC.
and
SONYA FREY, LPN
and
AMANDA SPAHR, MA
and
JOHN DOES I - V

            Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1:18-CV-01803-YK

THE HONORABLE
YVETTE KANE

JURY TRIAL DEMANDED

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

20

Respectfully submitted,

By:   /s/ Donald Reihart, Esquire
Donald L. Reihart, Esq.
Sup. Ct. I.D. #07421
28 E. Market Street 2nd Floor
York, PA  17401
Telephone:  (717)755-2799
Email:  email@reihartlaw.com
dlreihart@yorkcountypa.gov
Assistant Solicitor for the
County of York and
Solicitor for the York County Prison
Dated: February 8, 2021          Counsel for York County Defendants