## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD H. REILLY, as Administrator of the Estate of VERONIQUE AUNDREA HENRY, deceased,<br>　　　　　　Plaintiff<br><br>　　　v.<br><br>YORK COUNTY; WARDEN MARY SABOL; CORRECTIONAL OFFICER LYNETTE MOORE; CORRECTIONAL OFFICER MARIA STREMMEL; PRIMECARE MEDICAL, INC.; SONYA FREY, LPN; AMANDA SPAHR, MA; JOHN DOE I; JOHN DOE II; JOHN DOE III; JOHN DOE IV; and JOHN DOE V,<br>　　　　　　Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | NO.: 1:18-cv-1803-YK<br><br>CIVIL ACTION – LAW<br><br>JUDGE YVETTE KANE<br><br><br>*Electronically Filed*<br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

### PRIMECARE MEDICAL DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

AND NOW, come Defendants PrimeCare Medical, Inc. ("PrimeCare"), Amanda Spahr, MA, and Sonya Frey, LPN (collectively referred to as "PrimeCare Medical Defendants"), by and through their attorneys, Marshall Dennehey Warner Coleman & Goggin, who pursuant to Fed. R. Civ. P. 56(c) and Local Rule 56.1, file this Statement of Undisputed Facts and, aver as follows:

1. While incarcerated at the York County Prison, Plaintiff's decedent, Veronique Aundrea Henry ("Ms. Henry"), received in-prison medical care from PrimeCare Medical, Inc. (*See* Appendix at **Exhibit A**, relevant PrimeCare Records).

2. Ms. Henry underwent an intake at York County Prison on September 14, 2016. (**Exhibit A,** PrimeCare Medical Records at PCM00193-00201).

3. On September 14, 2016, a York County Prison correctional officer requested that a nurse from PrimeCare evaluate Ms. Henry for suicide precautions. (*See* Appendix at **Exhibit B,** 9/21/16 report by Sonya Frey, LPN; *see also*, Doc. 1, ¶ 20).

A. **SONYA FREY, LPN DOCUMENTATION**

4. Sonya Frey, LPN, a PrimeCare nurse, interviewed Ms. Henry while Ms. Henry was lying on a bench at the medical holding tank beside the counselor's office in the presence of Correctional Officers Maria Stremmel and Lynette Moore. (**Exhibit B,** 9/21/16 report by Frey; Doc. 1, ¶ 21).

5. In response to Nurse Frey's questioning, Ms. Henry stated that she was "tired," that she was incarcerated for homicide, that she "definitely" had "positive plans that this wasn't the end of the road for her," and that she was

relieved to be incarcerated "because it was finally a chance to get away from her husband who she claimed was physically and mentally abusive of her," and that she did not have feelings of hopelessness. (**Exhibit B**, 9/21/16 report by Frey; Doc. 1, ¶¶ 22-23).

6. Ms. Henry denied having any thoughts of suicide or hallucinations to Nurse Frey. (**Exhibit B**, 9/21/16 report by Frey).

7. Nurse Frey documented that Ms. Henry was "not crying, was speaking in normal tone, didn't curse, wasn't yelling" and that she was "noted to be calm and collective [sic] at this point." (**Exhibit B**, 9/21/16 report by Frey).

8. Ms. Henry stated that she took Paxil for anxiety. (**Exhibit B**, 9/21/16 report by Frey; Doc. 1, ¶ 24).

9. Nurse Frey told Ms. Henry to let security know if she needed anything, and they would let medical and/or mental health know. Ms. Henry responded, "I will." (**Exhibit B**, 9/21/16 report by Frey).

10. In Nurse Frey's medical judgment, she did not see a reason to place Ms. Henry on suicide watch as she "didn't give [Nurse Frey] any kind of bad feeling at all." (**Exhibit B,** 9/21/16 report by Frey).

11. Nurse Frey documented in her September 21, 2016, typewritten report that C.O. Lynette Moore replied, "I know her and I have a bad feeling about her, she isn't being herself" to which C.O. Maria Stremmel agreed. (**Exhibit B**, 9/21/16 report by Frey).

12. Nurse Frey noted that she disagreed with their "bad feeling" and did not see a basis to put Ms. Henry on suicide watch.  Nurse Frey informed the correctional officers that they could inform the captain and override her assessment in their discretion if they disagreed with her medical judgment. (**Exhibit B**, 9/21/16 report by Frey).

13. The correctional officers either did not discuss their concerns about Ms. Henry with the captain or the captain did not override Nurse Frey.

14. Nurse Frey then informed Amanda Spahr, MA that she had spoken with Ms. Henry, and that she did not believe Ms. Henry was suicidal; but that if Ms. Spahr disagreed or if Ms. Henry failed the intake suicide screen, then "by all means," Ms. Henry should be placed on suicide watch.  (**Exhibit B**, 9/21/16 report by Frey).

15. Because Nurse Frey did not document this encounter in the PrimeCare medical records, she created an Adverse Clinical Event with Root Cause Analysis confirming that Ms. Henry told her that she had "positive plans for the future," that

she did not have feelings of hopelessness, and that she denied any thoughts of harming herself. (*See* Appendix at **Exhibit C**, Adverse Clinical Event with Root Cause Analysis dated September 16, 2016).

**B.   CORRECTIONAL OFFICERS LYNETTE MOORE AND MARIA STREMMEL DOCUMENTATION**

16.   Correctional Officer Lynette Moore drafted an Officers' Daily Report in which she noted that Ms. Henry appeared to be "very solemn." (*See* Appendix at **Exhibit D**, 9/22/16 Officers Daily Report of C.O. Lynette Moore).

17.   C.O. Moore confirmed that she requested that Ms. Henry be evaluated by a PrimeCare nurse. (**Exhibit D**, 9/22/16 Officers Daily Report of Moore).

18.   C.O. Moore documented in the Officers Daily Report that "at no time during their conversation did inmate Henry admit to wanting to hurt herself." (**Exhibit D**, 9/22/16 Officers Daily Report of Moore).

19.   C.O. Lynette Moore and C.O. Maria Stremmel told Ms. Henry that if she felt down or wanted to hurt herself, she should "please come to the officers and talk to them." (**Exhibit D**, 9/22/16 Officers Daily Report of Moore).

20.   C.O. Moore told Ms. Henry, "Please don't let me come to work on Saturday and find that you did something stupid." Ms. Henry responded, "I won't." (**Exhibit D**, 9/22/16 Officers Daily Report of Moore).

21. C.O. Lynette Moore testified at her deposition the reason she wanted Ms. Henry screened by medical was the severity of Ms. Henry's charges. *See* Appendix at **Exhibit G**, Depo. of Lynette Moore, 17:7-12.

22. Ms. Henry seemed a little solemn, but was not crying. (**Exhibit G**, Moore Depo., 17:13-16).

23. Ms. Henry stated she did not want to kill herself. (**Exhibit G**, Moore Depo., 18:19-21).

24. Ms. Henry was focused on her children. (**Exhibit G**, Moore Depo. 17:17-21).

25. C.O. Moore had no reason to believe she would not see Ms. Henry alive again. (**Exhibit G**, Moore Depo, 24:15-19).

26. C.O. Moore was surprised by the suicide. (**Exhibit G**, Moore Depo., 26:1-3).

C. **AMANDA SPAHR, MA DOCUMENTATION**

27. On September 14, 2016, at 23:52, Amanda Spahr, MA documented an Intake Suicide Screening of Ms. Henry. (**Exhibit A,** PrimeCare records at PCM00131-00132, PCM00329; Doc. 1, ¶ 30).

28. In the Intake Suicide Screening, Ms. Spahr documented that the Transporting Officer and/or Ms. Henry responded <u>in the negative</u> to all questions

except: Detainee has experienced a significant loss within the last six months (unclarified); Detainee is very worried about major problems other than legal situation (unclarified); Detainee has mental health treatment history (unclarified). (**Exhibit A,** PrimeCare Records at PCM00131-00132; Doc. 1, ¶¶ 30, 34-36).

29. Ms. Henry scored a 3 on the Intake Suicide Screening and was not placed on suicide watch. Ms. Henry denied that she was thinking about killing herself. [Per the form, a score of 8 or more would have resulted in the initiation of suicide watch.] (**Exhibit A,** PrimeCare Records at PCM00131-00132).

30. On September 15, 2016, at 00:04, Ms. Spahr completed a Receiving Screening form. (**Exhibit A,** PrimeCare Records at PCM00193-00201).

31. The Receiving Screening form auto-populated "Problems recorded during prior incarcerations." (**Exhibit A,** PrimeCare Records at PCM00131).

32. None of the "Problems recorded during Ms. Henry's prior incarcerations" contained within the "Receiving Screening" form dated September 14, 2016, related to a previous attempted suicide or previous suicidal ideation. (**Exhibit A,** PrimeCare Records at PCM00131).

33. In the Receiving Screening form, Ms. Spahr documented that Ms. Henry reported in relevant part that she had been injured in a motor vehicle accident earlier that day and had a cut on her head, right arm swelling and bruising,

right ankle bruising, that she was addicted to Benzo and opiates, that her then current medications were Xanax, Percocert, Trazodone, Paxil, and an inhaler, she had asthma and ulcers, inter alia.  (**Exhibit A,** PrimeCare Records at PCM00193-00201; Doc. 1, ¶¶ 36-37).

34. Ms. Spahr documented that Ms. Henry appeared to be alert and oriented to time, place, and person and that her appearance was "appropriate." (**Exhibit A,** PrimeCare Records at PCM00193).

35. In the Receiving Screening form [Psychiatric Problems], Ms. Spahr documented that Ms. Henry's behavior, history and physical appearance did not suggest the risk of suicide and that Ms. Henry's mood and affect were appropriate. Ms. Spahr also documented that Ms. Henry reported that she had never tried to commit suicide in the past, that she did not feel suicidal, that she had never had any psychiatric hospitalizations, that she had never been treated by a psychiatrist, that she felt "fair" at being incarcerated, and that she had had a head injury earlier that day due to the motor vehicle accident.  (**Exhibit A,** PrimeCare Records at PCM00197).

36. In the Receiving and Screening form, Ms. Spahr documented that Ms. Henry felt that she needed a referral to see a mental health provider, but did not

document that the request was noted to be urgent or emergent. (**Exhibit A,** PrimeCare Records at PCM00197).

37. In the Receiving and Screening form, Ms. Spahr documented that Ms. Henry's disposition would be General Population. (**Exhibit A,** PrimeCare Records at PCM00201).

38. On September 14, 2016, at 23:50, Ms. Spahr documented in the Mental Health Screen for Women that Ms. Henry had responded to all of the screening questions in the negative. (**Exhibit A,** PrimeCare Records at PCM00224).

39. PrimeCare had verified Ms. Henry's reported at-home medications (Xanax, Percocet, Trazodone, Paxil, and an inhaler) per the Medication Verification Form dated September 15, 2016, at 08:46. (**Exhibit A,** PrimeCare Records at PCM00392).

**D.   PRIMECARE DOCUMENTATION**

40. As part of that intake process, Ms. Henry signed a Notification of Medical Services form at York County Prison on August 13, 2014. (**Exhibit A,** PrimeCare Records at PCM00483).

41. By signing a Notification of Medical Services form at York County Prison on August 13, 2014, Ms. Henry acknowledged that she had been advised on

how to sign up for sick call and on what to do in a medical emergency. (**Exhibit A,** PrimeCare Records at PCM00483).

42. In fact, Ms. Henry took advantage of the sick call procedure during all of her prior incarcerations at York County Prison. (**Exhibit A,** PrimeCare Records at PCM00549-00573).

43. On September 15, 2016, at 08:00, Ms. Henry was documented as having received morning doses of Clonazepam (a/k/a Klonopin), Dicyclomine (a/k/a Bentyl), Hydroxyzine (a/k/a Vistaril), Ondanstron (a/k/a Zofran), Pepto-Bismol, and Tylenol. (**Exhibit A,** PrimeCare Records at PCM00402-00403).

44. On September 15, 2016, at 09:16, Krystal Kline, LPN documented orders for opiate withdrawal 13 protocol and Clonazepam 2 mg taper per protocol. (**Exhibit A,** PrimeCare Records at PCM00703).

45. Per the Emergency Flow Sheet, Ms. Henry was found by prison security staff to be hanging from her window. (**Exhibit A,** PrimeCare Records at PCM00340-00341).

46. Ms. Henry was pronounced dead that day. (Doc. 1, ¶ 43).

E. **PRIMECARE DOCUMENTATION OF PREVIOUS INCARCERATIONS**

47. Per the PrimeCare medical records, Ms. Henry had no prior history of any reported suicide attempts or suicidal ideation. (**Exhibit A**, PrimeCare Records).

48. As set forth in the Intake Suicide Screening forms that were completed related to Ms. Henry's prior incarcerations, Ms. Henry always denied being suicidal and always denied having previously attempted to commit suicide. (**Exhibit A,** PrimeCare Records at PCM00117-130, PCM00704-00705).

49. As set forth in the Receiving Screening forms that were completed related to Ms. Henry's prior incarcerations regarding Ms. Henry's "Psychiatric Problems," Ms. Henry was never documented as having appeared to be suicidal nor did she report to the staff that she was suicidal. In addition, Ms. Henry informed the providers that she had never previously attempted to commit suicide. (**Exhibit A,** PrimeCare Records at PCM00133-00192).

50. As set forth in the Mental Health Screen for Women forms that were completed related to Ms. Henry's prior incarcerations, Ms. Henry reported that she had never previously been admitted to a psychiatric hospital. (**Exhibit A,** PrimeCare Records at PCM00218-00224).

51. As set forth in the Chart Notes for all previous incarcerations, Ms. Henry was documented as having always denied that she was having suicidal ideation when questioned by the PrimeCare staff ("denies si"). (**Exhibit A,** PrimeCare Records at PCM00242-00245).

52. As set forth in the York County Prison Intake Medical Screening Forms that were signed by Ms. Henry related to her previous incarcerations, Ms. Henry denied that she had ever previously considered or attempted suicide. (**Exhibit A,** PrimeCare Records at PCM00373-00377).

53. As set forth in the Mental Health Assessment form related to Ms. Henry's February 2014 incarceration, Ms. Henry denied having suicidal ideation and any psychiatric admissions. (**Exhibit A,** PrimeCare Records at PCM00435-00437).

54. Per the Mental Health Segregation Observation Check Sheet dated January 30, 2015, Ms. Henry was noted not to be a high risk for suicide. (**Exhibit A,** PrimeCare Records at PCM00438).

55. As set forth in the Mental Status Exam forms that were completed related to Ms. Henry's prior incarcerations, Ms. Henry's suicide risk was noted to be "none" and she was not noted to have a suicide plan. (**Exhibit A,** PrimeCare Records at PCM00435-00468).

56. Per the Relocation Pass forms for Ms. Henry's prior incarcerations, she was never previously placed on Suicide Watch or Psychiatric Observation. (**Exhibit A,** PrimeCare Records at PCM00505-540).

57. As set forth in the Request Forms and the Sick Call Requests completed by Ms. Henry during her previous incarcerations, she never reported that she was suicidal or that she was having suicidal ideation or a suicidal plan. (**Exhibit A,** PrimeCare Records at PCM00542-00573).

58. Per the Mental Health Sick Calls, Ms. Henry denied suicidal ideation ("denies SI" or "0 SI") when assessed by the psychiatrist and mental health nurses during her prior incarcerations. (**Exhibit A,** PrimeCare Records at PCM00592-00601).

59. Ms. Henry never reported that she was suicidal to any PrimeCare staff before she committed suicide on September 15, 2016. (**Exhibit A,** PrimeCare Records).

**F.   PrimeCare Suicide Prevention Policy and Training are consistent with national standards.**

60. The intake procedures utilized by PrimeCare at the York County Prison are consistent with National Commission on Correctional Health Care standards. *See* Appendix at **Exhibit H,** expert report of Richard Althouse, Ph.D., p. 11.

61. The suicide risk assessment tool is the "New York Model" which is professionally recognized and accepted in corrections as an appropriate screening tool to assess for potential suicidality. (**Exhibit H**, Althouse Report, p. 11).

62. PrimeCare policy for Receiving Screenings acknowledges that a nurse and/or medical assistant can complete the screening questionnaires. NCCHC also allows and approves of trained correctional officers to ask the Receiving Screening questions when healthcare staff is not available. Both Nurse Frey and MA Spahr were compliant with PrimeCare policy and NCCHC standards related to conducting screening questions. *See* Appendix at **Exhibit I**, expert report of Kimberly Pearson, RN, p. 15.

63. Suicide prevention training is provided to PrimeCare employees on a yearly basis. *See* Appendix at **Exhibit J**, Depo. of Thomas J. Weber, Esquire, 21:13-18.

64. PrimeCare employees are also trained in suicide prevention at the time of hire. (**Exhibit J**, Weber Depo., 21:19-25).

65. Training on an annual basis exceeds the nation standard of bi-annual training which was in place at the time of Ms. Henry's suicide. (**Exhibit J**, Weber Depo., 21:19-25).

66. Placing an inmate on suicide precautions when the precautions are not warranted can have a negative impact on the inmate's mental health. (**Exhibit J**, Weber Depo., 41:20 through 42:2).

                    Respectfully submitted,

                    MARSHALL DENNEHEY WARNER
                    COLEMAN & GOGGIN

By: */s/ John R. Ninosky*
     JOHN R. NINOSKY, ESQUIRE
     PA Attorney ID No. 78000
     KAREN E. MINEHAN, ESQUIRE
     PA Attorney ID No. 78050
     100 Corporate Center Drive, Suite 201
     Camp Hill, PA  17011
     Telephone (717) 651-3709
     jrninosky@mdwcg.com

Date:  February 8, 2021     *Attorney for PrimeCare Medical Defendants*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of February, 2021, the foregoing *Statement of Undisputed Facts* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following, which service satisfies the requirements of the Federal Rules of Civil Procedure:

Joshua A. Anstine, Esquire
Law Office of Dale E. Anstine, P.C.
2 West Market Street
P.O. Box 952
York, PA  17401
janstine@4anstine.com
*Attorney for Plaintiff*

Leticia C. Chavez-Freed, Esquire
The Chavez-Freed Law Office
2600 N. 3rd Street, 2nd Floor
Harrisburg, PA  17110
leticia@chavez-freedlaw.com
*Attorney for Plaintiff*

Donald L. Reihart, Esquire
Assistant York County Solicitor
28 E. Market Street, 2nd Floor
York, PA  17401
email@reihartlaw.com
dlreihart@yorkcountypa.gov
*Attorney for County Defendants*

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By:   */s/ John R. Ninosky*
        John R. Ninosky